STATE of Wisconsin, Plaintiff-Respondent,

v.

John W. PAGE, Defendant-Appellant.†

Court of Appeals

*No. 99–2015–CR. Submitted on briefs July 20, 2000.—Decided November 30, 2000.*

## 2000 WI App 267

(Also reported in 622 N.W.2d 285.)

†Petition to review dismissed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William E. Schmaal,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Vergeront and Deininger, JJ., and William Eich, Reserve Judge.

¶ 1. VERGERONT, J.  John Page appeals his judgment of conviction for stalking,[1] entry to a locked

---

[1] WISCONSIN STAT. § 940.32(2) provides:

(2)  Whoever meets all of the following criteria is guilty of a Class A misdemeanor:

(a)  The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to himself or herself or a member of his or her immediate family or to fear the death of himself or herself or a member of his or her immediate family.

dwelling, and criminal damage to property contrary to WIS. STAT. §§ 940.32(2) (1997–98),[2] 943.15, and 943.01(1), respectively, all committed with a dangerous weapon in violation of WIS. STAT. § 939.63. He contends the evidence at trial was insufficient to support the jury's findings on the dangerous weapon enhancer under the standard established in *State v. Peete*, 185 Wis. 2d 4, 517 N.W.2d 149 (1994). We conclude the evidence was sufficient to support a finding beyond a reasonable doubt that he committed each of these three offenses while possessing a dangerous weapon to facilitate each predicate offense, which fulfills the standard established in *Peete*. We therefore affirm.

## BACKGROUND

¶ 2.  The three offenses for which Page was convicted involved his former wife, Pok Sun Page. The State's theory was that Page stalked Pok Sun[3] in a course of conduct from February to March 12, 1998, which culminated with his breaking into her residence on March 12 and damaging the building in the process.

---

(b)   The actor has knowledge or should have knowledge that the specific person will be placed in reasonable fear of bodily injury to himself or herself or a member of his or her immediate family or will be placed in reasonable fear of the death of himself or herself or a member of his or her immediate family.

(c)   The actor's acts induce fear in the specific person of bodily injury to himself or herself or a member of his or her immediate family or induce fear in the specific person of the death of himself or herself or a member of his or her immediate family.

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[3] We refer to Pok Sun Page by her first two names to distinguish her from the defendant, John Page.

The State alleged that Page possessed a knife when he committed each of the three crimes.[4]

¶ 3.    At trial, the State presented the following evidence. Pok Sun lived with their two children. Page had told Pok Sun that if she ever had a boyfriend, he would kill them both. When a male co-worker of hers came to her residence to teach her how to drive in January or February of 1998, Page pounded on the door and told Pok Sun to get the man out of the house. Thereafter, he came to her house almost everyday, pounding on the door or just standing outside. He also frequently called their son to ask about Pok Sun's co-worker, and he began parking his car away from the parking lot where Pok Sun could not see it. Pok Sun and her son were frightened by Page's conduct; she did not let Page into her residence when he came, but instead spoke to him through a window.

¶ 4.    On the morning of March 12, 1998, while Pok Sun went out to warm up her car in the parking lot, Page entered her residence briefly, then went to her car, sat down in it, and began searching for the owner's manual. Pok Sun ran into the house, and then back to the car when she believed Page was gone. Page reappeared and angrily told her through the car window that he wanted to use her car, and then left. Later that evening, Pok Sun and her daughter went out and her son stayed home, although he was to have accompanied them. Page had known about their plans to go out. While home that evening, the son heard a drilling noise coming from a back window on the ground floor. He

---

[4] Page was also convicted of one count of felony armed burglary and one count of criminal damage to property (regarding Pok Sun's vehicle), but the court entered a separate judgment with respect to those and they are not involved in this appeal. The jury acquitted Page of one felony armed burglary count.

was afraid someone was trying to break-in, so he turned out the lights, locked the door, ran across the street and then ran to a neighbor's house. He saw Page's car parked nearby and he saw Page open the door of Pok Sun's residence from the inside. A neighbor went to Pok Sun's residence to investigate.

¶ 5.   When police officers arrived at Pok Sun's residence, they found entry to the residence had been made by means of a drilled rear window. The officers found Page inside the residence and, after a fight, placed him under arrest. After they left with Page, the son found Page's glove and hat on the floor inside the residence, and in a closet he found a cordless drill, some screwdrivers, two pairs of pliers, two knives, one with a nine-and-one-half-inch blade, and two hoods. The next day the brakes on Pok Sun's car failed and she struck another vehicle. A mechanic who examined her car later that day discovered the brake lines were not rusty and had been severed at three wheels. He testified it was highly unusual for all three to break at the same time.

¶ 6.   The only witness for the defense was the neighbor who went to investigate for Page's son, and his testimony was consistent with that of the State's witnesses.

¶ 7.   In addition to being instructed on the elements of the offenses of stalking, entry into a locked dwelling and criminal damage to property, the jury was instructed on the dangerous weapon enhancer for each offense. Specifically, the jury was instructed that in order to find Page guilty beyond a reasonable doubt of committing each crime while possessing a dangerous weapon, it must be satisfied Page "committed the crime while possessing a dangerous weapon and possessed the dangerous weapon to facilitate the crime."

¶ 8. After the jury returned guilty verdicts finding Page had committed each of the three offenses while possessing a dangerous weapon, Page filed a post-conviction motion challenging the sufficiency of the evidence to support the findings on the dangerous weapon. The court denied the motion.

## DISCUSSION

¶ 9. When we review a challenge to the sufficiency of the evidence to support a guilty verdict, we uphold the verdict unless the evidence, viewed most favorably to the conviction, including all reasonable inferences drawn in favor of the verdict, is so lacking in probative value and force that no reasonable jury could have found guilt beyond a reasonable doubt based on the evidence. *State v. Poellinger*, 153 Wis. 2d 493, 504, 507, 451 N.W.2d 752 (1990).

¶ 10. On appeal, Page does not question the sufficiency of the evidence to convict him of the underlying three offenses, but only the sufficiency of the evidence to convict him of the penalty enhancer for a dangerous weapon under WIS. STAT. § 939.63. This statute provides:

> Penalties; use of a dangerous weapon. (1)(a) If a person commits a crime while possessing, using or threatening to use a dangerous weapon, the maximum term of imprisonment prescribed by law for that crime may be increased as follows:
> 1. The maximum term of imprisonment for a misdemeanor may be increased by not more than 6 months.

Section 939.63(1)(a)1. As to this statute, Page does not contend the evidence is insufficient for a reasonable jury to find beyond a reasonable doubt that he pos-

sessed the nine-and-one-half-inch blade knife.[5] Rather, he contends that under *Peete* the State must prove a "factual nexus" between the dangerous weapon and the predicate offense, namely, that the weapon "facilitated" the commission of the crime. According to Page, in *Peete* the court explained the term "facilitate" is parallel in meaning to the statutory terms "using" or "threatening to use" the dangerous weapon. Page argues that, even if the knives found in Pok Sun's residence were dangerous weapons, there was no evidence he "used or threatened to use" them in the commission of any of the three crimes. Indeed, Page points out, there is no evidence Pok Sun and the children knew Page possessed the knives until after his arrest.

¶ 11. We disagree with Page's reading of *Peete* and, therefore, with the premise of his argument. In *Peete*, the police officers found cocaine and loaded handguns while searching Peete's residence. *Peete*, 185 Wis. 2d at 11. He was charged with possession of cocaine with intent to deliver while in possession of a dangerous weapon. *Id.* The jury was instructed that if it was "satisfied beyond a reasonable doubt that the defendant committed the crime while possessing a dangerous weapon," it could answer "yes" to the question whether Peete committed the crime while possessing a dangerous weapon. *Id.* at 12–13. The court first decided that "possession" under WIS. STAT. § 939.63 included constructive as well as actual possession. *Id.* It then addressed the question whether the phrase "while possessing" requires the State to prove the existence of a

---

[5] We do not understand Page to be arguing that a reasonable jury could not have decided that a knife with a nine-and-one-half-inch blade is a dangerous weapon. In the event Page does intend to raise this issue, we hold that a reasonable jury could make that determination based on the evidence.

nexus between the crime and the weapon. *Id.* at 9. The State and Peete both asserted the State did have to prove a nexus, and the court agreed. *Id.* at 16–17.

¶ 12. The court went on to define an adequate nexus. It concluded, when the State charges that a defendant has committed a crime while possessing a dangerous weapon, the State must prove the defendant possessed the weapon to facilitate commission of the predicate offense. *Id.* at 18. The court arrived at this conclusion by analyzing the language of WIS. STAT. § 939.63. *Id.* The court observed that when the defendant commits a crime while using or threatening to use a dangerous weapon, the weapon facilitates the commission of the crime because the use or threat of use makes the victim afraid, protects the defendant, and protects any contraband in the defendant's possession. *Id.* "Thus," the court stated, "the nexus requirement we establish, that a defendant possess the weapon to facilitate commission of the predicate offense, makes the language 'while possessing' in sec. 939.63 parallel in meaning to 'while . . . using' or 'while . . . threatening to use.' " *Id.* The court reversed the jury's answer to the question on the weapon enhancer and remanded for a new trial on that issue "[b]ecause the court did not require that the jury find beyond reasonable doubt that Peete possessed a dangerous weapon to facilitate the commission of the predicate drug offense." *Id.* at 19.[6]

■

¶ 13. The court in *Peete* did not make "possessing" under WIS. STAT. § 939.63 the equivalent of either

---

[6] In the later case of *State v. Howard*, 211 Wis. 2d 269, 564 N.W.2d 753 (1997), the supreme court ruled that the holding of *State v. Peete*, 185 Wis. 2d 4, 517 N.W.2d 149 (1994), regarding the nexus requirement applies to actual as well as constructive possession.

"using" or "threatening to use," as Page contends. Rather, the court validated "possessing" as a third alternative under the statute, as long as it was further defined as "possessing to facilitate commission of the crime." Page's reading of *Peete*—that possessing under § 939.63 requires evidence of either use or threat of use—directly contradicts the court's analysis in *Peete* and makes "possessing" superfluous. Under the correct reading of *Peete*, if the evidence is such that a reasonable jury may find beyond a reasonable doubt that the defendant possessed a dangerous weapon in order to use it or threaten to use it should that become necessary, the evidence is sufficient under § 939.63 even if the defendant did not actually use or threaten to use the weapon in the commission of the crime.

¶ 14. With this understanding of *Peete*, we consider whether there is sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, that Page possessed the knife with the nine-and-one-half-inch blade to facilitate each of the three predicate crimes. Viewing the evidence most favorably to the State and drawing all reasonable inferences in favor of the State, we conclude the evidence is sufficient.

¶ 15. The jury could reasonably infer Page used the drill to break the latch on a window through which he then entered the premises. Because the knife was found with the drill and with other tools that could also be used for breaking into the residence, the jury could reasonably infer Page possessed the knife in order to protect himself and prevent interference by another, thereby facilitating breaking into the apartment. Since two crimes were committed when Page broke into the apartment—entry into a locked building and criminal damage to property—the jury could reasonably infer he

possessed the knife for the purpose of facilitating those two crimes.

¶ 16.　With respect to the stalking offense, the jury could reasonably infer Page not only possessed the knife when he entered Pok Sun's residence, but had it readily available while he was in her residence. It could also reasonably infer he entered Pok Sun's residence to culminate his course of stalking her by causing her to fear injury or death. Finally, the jury could reasonably infer Page possessed the knife to facilitate stalking Pok Sun, intending to use it to cause her to fear death or injury.

*By the Court.*—Judgment affirmed.