STATE of Wisconsin, Plaintiff-Respondent,

v.

Mitchell D. PASK, Defendant-Appellant.

Court of Appeals

*No. 2009AP559–CR. Submitted on briefs February 23, 2010.*
*—Decided March 31, 2010.*

2010 WI App 53

(Also reported in 781 N.W.2d 751.)

556

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jefren E. Olsen*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William L. Gansner*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Snyder, J.

¶ 1. BROWN, C.J. This is a child enticement case where the jury found Mitchell D. Pask guilty of attempting to lure a nine-year-old girl to a park shelter area for the purpose of having sexual contact with her. The issue

on appeal is the meaning of "secluded place" in WIS. STAT. § 948.07 (2007–08).[1] Pask primarily argues this issue under the guise of an ineffective assistance of counsel claim, faulting his trial counsel for not objecting to the meaning given to the jury by the trial court regarding the term "secluded place." At trial, the jury was instructed that "secluded place" means "a place screened or hidden from view or remote from others." On appeal, Pask appears to assert that, to be secluded, the location must be completely blocked from view or access. But the purpose of the statute is to prevent actions by persons who intend to remove a child from the general public's protection. Therefore, we conclude that when there is evidence that a defendant has an intention to take a child to a place that is partially screened or hidden from view, a jury may find that it is with the purpose to take the child away from public safety. Indeed, any place that removes the child from the public's protection to a place less likely to be detected by the public would suffice as being a "secluded place." The meaning of "secluded place" given at trial, therefore, inured to Pask's benefit because it promoted a more limited definition of "secluded place" than the statute requires. Pask's trial counsel cannot be labeled deficient when he secured such a benefit to his client. We affirm.

## BACKGROUND

¶ 2. On a summer afternoon, a nine-year-old girl named Alexxus was playing "house" in the park with three neighbor girls, ages thirteen, nine, and eight. Christine was the thirteen-year-old girl, and the other

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

two girls were her younger sisters. At some point Christine took the girls to the restroom.

¶ 3. A man, who was later identified as Pask, was near the restroom when the last girl, Christine, was coming out. Pask was standing about three feet from Christine and was looking back and forth between her, her sisters, and Alexxus. Then he said to the girls "[l]ook at those sexy little salty kids." The girls then left the restroom area and went back to the playground. Pask went back to the park shelter, but then he started pacing back and forth between a table by the playground and a pole by the park shelter. While Pask was pacing, he was mumbling to himself and looking back and forth at the children.

¶ 4. Then Pask said to Alexxus and the two younger girls, "little girls, [do] you want some candy? I'll grab you some candy. Just follow me and you'll get it for free." Pask was about five to six feet from the three younger girls when he said that. Alexxus recalled that Pask said something like this to her only once, but Christine, who was standing nearby, thought it happened twice. When he said this to the girls, he gestured with his hand by waiving and with a motion of an index finger for the girls to follow him to the shelter. They both thought that Pask was referring to the shelter area by the picnic tables where no one else was around. Pask's comments upset Alexxus, and she told him: "I don't have to listen to you, you're not my parent. And I don't want to come by you."

¶ 5. After Pask offered the candy, Christine, Alexxus and the other two girls started walking home. Christine told the girls to go to Alexxus's mother's house, since it was closest. When they crossed the street to go home, however, Pask started following them about eight feet behind. Christine instructed the girls to run,

559

and when the girls got inside Alexxus's house, the police were called. Shortly thereafter, the police found Pask, who had walked around the block, and noticed that he appeared to be intoxicated. After Alexxus identified Pask, he was arrested.

¶ 6. The State charged Pask with one count of child enticement. Pask pled not guilty, and the case went to a jury trial. The jury heard the above facts through testimony at trial from Alexxus, Christine and the responding officers. Pask did not testify.

¶ 7. The jury also saw five pictures of the park taken from five different vantage points. The pictures showed a view of the shelter area from (1) the street, showing that a bush and park sign blocked part of the view of the shelter; (2) a park walkway, showing that a tree and one of the pillars blocked part of the view; (3) the same park walkway, but closer to the shelter where the walkway is below the grade of the shelter, showing that the grade difference blocked part of the view; (4) the playground area, showing that the playground equipment blocked part of the view; and (5) the playground area further from the shelter, showing that in addition to the playground equipment a tree blocked part of the view.

¶ 8. At the jury instruction conference, Pask requested an instruction on the meaning of "secluded place." Pask argued that the court should use the dictionary definition of "secluded" to instruct the jury that "secluded place" means "a place screened or hidden from view." The State also relied on dictionary definitions; it requested that the definition be "removed or remote from others." It objected to the use of the word "screened," "because [screened] goes beyond what the word . . . means in this context." Pask responded by repeating that the definition should include " 'screened'

or 'hidden' from view." The trial court then discussed the dictionary definitions the parties cited and decided that the definition of "secluded place" would be "a place screened or hidden from view or remote from others." Both parties declared that the court's instructions were "fine." The jury received that instruction and returned a guilty verdict.[2]

¶ 9. On appeal, Pask raises the issue of whether the place he tried to entice Alexxus to was a "secluded place." His theory is that the trial court defined "secluded place" incorrectly. And since his trial counsel was "fine" with the given instruction, he mainly approaches his argument—as he must—through the guise of an ineffective assistance of counsel claim. *See State v. Johnston,* 184 Wis. 2d 794, 822–23, 518 N.W.2d 759 (1994) (holding that a party's failure to object to the jury instructions at trial waives the issue for later review). So, ultimately, the question we answer is

[2] At the close of the State's case-in-chief Pask moved for a directed verdict of not guilty on grounds that the State had not introduced sufficient evidence upon which a reasonable jury could conclude that the shelter area met the definition of a "secluded place." The court reserved ruling on the motion. After the jury returned a guilty verdict, the court granted Pask's motion, set aside the jury's verdict and ordered a judgment of acquittal. The State then moved for reconsideration. On reconsideration, the State argued that the shelter area was secluded because it was screened or hidden from view, in that there is a large sign and big bushes, grass and shrubs surrounding parts of the shelter, and it was remote from others, in that there was evidence at trial that the shelter was fifty feet from a road that was lightly trafficked on one side and about fifty feet from a river on another side of the shelter. The court ultimately reinstated the guilty verdict and sentenced Pask to eight years of initial confinement and four years of extended supervision. Pask then moved for postconviction relief, which the court denied.

whether Pask's counsel was ineffective for advocating and agreeing to a less precise definition of "secluded place." Pask also challenges the sufficiency of the evidence under either the definition given to the jury at trial or the definition he proposes on appeal.

## DISCUSSION

### *Ineffective Assistance of Counsel*

¶ 10.    The standards for reviewing an ineffective assistance of counsel claim are well known from the landmark case *Strickland v. Washington*, 466 U.S. 668 (1984):    "First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. We need not discuss both prongs if the defendant makes an insufficient showing on one. *Id.* at 697. Here, we start with the deficiency prong. This requires us to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689 (citation omitted).

¶ 11.    Since Pask's challenge is to the meaning of "secluded place," our review requires us to interpret and apply the child enticement statute, WIS. STAT. § 948.07. Statutory interpretation and application present questions of law which we review independently of the

determinations rendered by the trial court. *See State ex rel. Hipp v. Murray*, 2008 WI 67, ¶ 20, 310 Wis. 2d 342, 750 N.W.2d 873. Section 948.07, states: "Whoever, with intent to commit any of the following acts, causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place is guilty of a Class D felony." Neither the statute nor case law defines "secluded place."

¶ 12. As we stated earlier, Pask's trial counsel advocated to the trial court that "secluded place" meant "a place screened or hidden from view." And the instruction given to the jury was "a place screened or hidden from view or remote from others."

¶ 13. On appeal, Pask defines "secluded place" somewhat differently—"one in which the child is or will be (in the case of an attempt) removed from the protection of the general public so that the commission of the denominated illegal conduct might be facilitated." He posits that "[w]hile the definitions relied on by the parties and the court are the leading definitions contained in ordinary dictionaries, they do not, either separately or together, adequately and completely convey to the jury the legislative intent embodied in the phrase." The legislative intent he cites in support is *State v. Koenck*, 2001 WI App 93, ¶ 9, 242 Wis. 2d 693, 626 N.W.2d 359, in which we stated that the statute's purpose is to "address the social evil of removing children from the protection of the general public."

¶ 14. Pask latches on to the word "remove" in *Koenck*. He asserts that a place which merely prevents the public from seeing what is going on, from one vantage point as opposed to another, does not really result in "removal" of the child from the public. Because the defendant and the child are still capable of being

seen from another vantage point, Pask argues that such a place cannot be equated with removal. He asserts that the definition of "secluded place" must mean, therefore, that the defendant in fact "removes" the victim from *any* view by the public. In his brief, he elucidates upon this theory by ultimately contending that a "secluded place" is a place without any public protection whatsoever; in other words, only completely screened or hidden places qualify.

¶ 15.  Nothing in the statute or Wisconsin case law, however, limits "secluded places" to locations that are completely removed from the public, as Pask suggests. We provided a more detailed explanation of the legislative intent in *State v. Hanson*, 182 Wis. 2d 481, 513 N.W.2d 700 (Ct. App. 1994). There, we explained that the child enticement statute addresses the "luring and secluding of children" because a "secluded place" "provides the opportunity, with substantially less risk of detection, for the person to exercise force and control over the child for purposes of sexual gratification." *See id.* at 487. Reducing the risk of detection does not require the "secluded place" to be *completely* removed from the public's protection. Moreover, as both parties appear to admit, "secluded" is not a technical term; it is, as we conclude from the statutory intent, a common sense word. So in the context of child enticement, a "secluded place" would include any place that provides the enticer an opportunity to remove the child from within the general public's view to a location where any intended sexual conduct is less likely to be detected by the public.

¶ 16.  From this definition we conclude that a screened or hidden place (partially or completely) would qualify as a "secluded place." And a place need not even

be screened or hidden or remote if some other aspect of the place lowers the likelihood of detection. All the statute requires is that the place provides *a* means by which to exclude the child and reduce the risk of detection. So, by convincing the trial court to give the instruction that it did, Pask's trial counsel actually helped to craft an instruction which was more limited than what the term actually means. Therefore, we cannot say that Pask's trial counsel was deficient in this regard.

¶ 17.    As for the argument that counsel failed to request the court to designate a *place* for the jury to focus on, the testimony at trial all pointed to one "place"—the shelter and surrounding area. The jury had sufficient information from which it could decide if Pask was intending to take the girl to a specific "secluded place." Thus, counsel was not deficient on this issue either.

¶ 18.    For all the above reasons, we also reject Pask's related request that we reverse in the interest of justice because the real issue was not tried. We are satisfied that the real issue *was* tried.

### Sufficiency of the Evidence

¶ 19.    Pask finally argues that, even if we reject his understanding of the term "secluded place," the evidence was insufficient.[3] When a defendant challenges a

---

[3] Pask also argues that the evidence of a "secluded place" is insufficient as a matter of law under *his* definition. But, as we pointed out, *his* definition was never put before the jury. Therefore, we reach only his issue regarding the proper definition of the term "secluded place" under the guise of ineffective assistance of trial.

verdict based on sufficiency of the evidence, we give deference to the jury's determination and view the evidence in the light most favorable to the State. *See State v. Hayes*, 2004 WI 80, ¶ 57, 273 Wis. 2d 1, 681 N.W.2d 203.

¶ 20.   In this case, two girls testified that Pask offered Alexxus candy to lure her to another area of the park by the park shelter. The jury saw pictures of the park shelter area where Pask wanted to take her. And while, looking at the pictures, anyone could see that the park shelter is open-sided and is primarily not hidden from onlookers. The same pictures show that the view is partially screened or hidden in places. These pictures also show that the shelter itself was partially blocked by landscaping, a sign, and support pillars, any one of which the jury could infer was sufficient to hide a nine-year-old girl behind for a period of sexual contact. The jury also saw that the topography of the area surrounding the shelter could have provided other places to hide the girl. Therefore, the jury had all the evidence it needed to find that the shelter area was "hidden or screened from view or remote from others." We affirm.

*By the Court.*—Judgment and order affirmed.