HRUZ, J.
¶ 1 Shayd Mitchell challenges the sufficiency of the evidence supporting his conviction for attempted child enticement. After engaging in sexually explicit communications with a person he believed was a minor and arranging to meet that person at a Family Video store, Mitchell was arrested approximately two blocks from the designated meeting site while walking toward that location. We reject Mitchell's argument that the evidence was insufficient for the jury to conclude he had taken an action in furtherance of his intent to commit child enticement. We also reject Mitchell's argument that the Family Video was not a "secluded place" within the meaning of the child enticement statute, as Mitchell's communications demonstrated that the Family Video was not the location where the sexual contact was to occur. Rather, Mitchell had offered to take the minor to his residence after their meeting at the store. We affirm.
BACKGROUND
¶ 2 An Information charged Mitchell with use of a computer to facilitate a child sex crime, attempted child enticement, and misdemeanor bail jumping. Mitchell pled guilty to the bail jumping charge and proceeded to trial on the computer facilitation and child enticement charges, after which the jury convicted him of both offenses.
¶ 3 At trial, Sturgeon Bay police sergeant Gregory Zager testified that he was performing work for the Internet Crimes Against Children Wisconsin State Task Force on September 21, 2013. He located an advertisement on Craigslist titled, "Twinks Only-m4m-23 (Wausau, WI)." The advertisement stated as follows:
DO NOT REPLY IF UR NOT INTERESTED. Sup, Imma top white daddy seeking a young boy. I want an experienced boy that knows what he is doing. I am not impressed by virgin. DO NOT REPLY IF UR NOT SERIOUS. I want to touch u, jerk u, suck u and fuck u. If it serious and interested, txt ur age to 6zero8 5twozero 6seven3nine. DO NOT REPLY IF UR NOT INTERESTED.
;)DaddyDoc
Zager testified, based upon his training and experience, that "Twinks basically means a young physically fit gay male," although they are not necessarily underage. Zager testified that he understood the person posting the advertisement to be a male "who's seeking out a young boy ... and he wants to have sexual contact and intercourse with that young boy" and "want[ed] to be in control of the situation."
¶ 4 Zager, posing as a fifteen-year-old boy named "Chris," sent a text message to the phone number identified in the advertisement. During the ensuing text conversation, the as-yet-unidentified suspect asked if "Chris" was a virgin, if he was a "bottom," if he lived in Wausau, and if he would send pictures. The suspect asked that the pictures be emailed to "daddydoc4you@yahoo.com." Zager sent the suspect a picture of a young-looking police sergeant.
¶ 5 Zager asked the suspect what he had in mind, to which the suspect replied, "Meet up. Go to my place. And have sum fun." Zager replied he could be "ready to go in about 30 or so or whenever u want." The suspect asked if "Chris" had a car. Zager replied that "Chris" was only fifteen and could not drive. Ultimately, the suspect then suggested they meet at a Family Video in Wausau. The suspect stated it would take him about ten minutes to get there, and he provided a description of the clothing he would be wearing: a red Chicago Bulls fitted hat, red shoes, and a black jacket.
¶ 6 At 8:30 p.m., the suspect sent Zager a text message advising him that he was "leaving now." The suspect told "Chris" they could go back to his residence, as he was located not far from the Family Video. At about 8:40 p.m., the suspect sent a text that said, "Walking down sixth now. Just passed Kwik Trip." He asked "Chris" to walk toward him on Sixth Street.
¶ 7 As Zager was communicating via text message with the suspect, he was on the phone with officer Benjamin Graham from the Wausau Police Department. Graham determined the phone number from the Craigslist advertisement was associated with Mitchell's address, which was in the general area of the Family Video. Zager provided Graham with the location of the Family Video where the suspect was supposed to meet "Chris," and Graham located a person consistent with Zager's description walking south on Sixth Street. Graham testified that the Family Video was approximately two blocks south of where he saw Mitchell walking, and that Mitchell's route of travel would have been consistent with someone walking from Mitchell's address to the Family Video.
¶ 8 Graham parked his unmarked police squad, exited, and approached Mitchell. Graham yelled out the name "Shayd," and Mitchell turned, looked at him, and his head sank to his chest. When Graham asked Mitchell if he knew why he had been stopped, Mitchell said he was "messing around on [Craigslist] and was meeting up with somebody at Family Video." Graham searched Mitchell and located a cell phone, which rang when Graham called the phone number listed in the Craigslist advertisement. Police also located on Mitchell's phone the text messages between Mitchell and "Chris."
¶ 9 Mitchell, who had a significant history of past child sex offenses, was sentenced to concurrent sentences totaling fourteen years' initial confinement and six years' extended supervision. He filed postconviction motions on other grounds, which were denied.[1] Mitchell now appeals.
DISCUSSION
¶ 10 Mitchell's only challenge on appeal is to the sufficiency of the evidence supporting his conviction for attempted child enticement.[2] We will not reverse a conviction for lack of sufficient evidence "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." State v. Poellinger , 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). Whether the evidence is sufficient to support a conviction is a question of law that we review de novo. State v. Banks , 2010 WI App 107, ¶ 43, 328 Wis. 2d 766, 790 N.W.2d 526.
¶ 11 Child enticement is proscribed by WIS. STAT . § 948.07 (2015-16). As relevant here, the State was required to prove three elements: (1) that Mitchell attempted to cause a child to go into a vehicle, building, room or secluded place; (2) that he did so with the intent to have sexual contact with the child; and (3) that the intended victim was underage. See State v. Hendricks , 2018 WI 15, ¶ 21, 379 Wis. 2d 549, 906 N.W.2d 666. The crime is not the bad acts with the child, per se; rather, the aim of the child enticement statute is "to address the social evil of removing children from the protection of the general public." State v. Koenck , 2001 WI App 93, ¶ 9, 242 Wis. 2d 693, 626 N.W.2d 359.
¶ 12 Because the police intercepted Mitchell prior to him completing the child enticement offense, the jury was instructed in accordance with the law of attempt. For purposes of the child enticement statute, "an attempt is complete when the defendant, with intent to commit a crime, takes action in furtherance of such intent and the failure to accomplish the crime is due to a factor beyond his or her control or one unknown to him or her." Id. , ¶ 28. The fact that the child is fictitious does not preclude a prosecution; rather it is an extraneous factor beyond the defendant's control that prevents him or her from successfully completing the crime. Id.
¶ 13 Mitchell appears to argue that, here, the police intercepted him too early. Mitchell observes that police apprehended him prior to his arriving at Family Video. He argues the two-block distance "offered substantial opportunities for him to reflect and abandon his plans." He also points to the text exchange as showing that he was not going to decide whether to go through with the sexual activity until he "could evaluate ['Chris'] (at a distance if necessary) to determine if he met the physical and other criteria Mitchell set for a sex partner." In Mitchell's view, "[a] discussion with Mitchell and the decoy was needed before a decision was made to go to Mitchell's apartment for illicit sexual activity."
¶ 14 Whether Mitchell might have had a change of heart if given more time is irrelevant in light of the principles regarding attempted crimes, as outlined above. To convict Mitchell of attempted child enticement, the jury was required to find that he had formed the intent to commit the crime and had taken an action in furtherance of that intent. See WIS. STAT . §§ 939.32(3) ; 948.07(1) (2015-16); WIS JI- CRIMINAL 2134B (2016). Mitchell does not appear to take issue with the "intent" aspect; rather, the gist of his argument is that merely walking toward the Family Video was not a sufficient act in furtherance of his intent to take "Chris" back to his residence for sexual contact.
¶ 15 Mitchell places significant reliance on State v. Brienzo , 2003 WI App 203, 267 Wis. 2d 349, 671 N.W.2d 700. In that case, Brienzo had arranged via the Internet to meet the fictional teenager at a McDonald's restaurant. Id. , ¶ 7. Brienzo was arrested after he had entered the restaurant. Id. In analyzing if there was probable cause for a charge of attempted child enticement, we concluded that "Brienzo's appearance at the prearranged site signals probable cause to believe that he had the intent to proceed with the criminal sexual activity discussed" and that, absent police intervention, the crime would have been completed. Id. , ¶ 17. However, contrary to Mitchell's argument, our Brienzo opinion in no way suggested that anything less than entering the designated meeting place fails to support probable cause for a charge of attempted child enticement.[3]
¶ 16 Mitchell also relies on State v. Grimm , 2002 WI App 242, 258 Wis. 2d 166, 653 N.W.2d 284. In Grimm , we considered whether a complaint set forth probable cause to believe the defendant had committed the crime of attempted child enticement. Id. , ¶ 15. We observed that the facts of Grimm were similar to the facts in State v. Robins , 2002 WI 65, 253 Wis. 2d 298, 646 N.W.2d 287. In both cases, the defendant had engaged in sexually explicit conversions with someone he believed to be a child. Grimm , 258 Wis. 2d 166, ¶ 3 ; Robins , 253 Wis. 2d 298, ¶¶ 5-8. In both cases, the defendant arranged to meet the fictitious child at a specific time and place, after which the defendant offered to procure a hotel room. Grimm , 258 Wis. 2d 166, ¶ 4 ; Robins , 253 Wis. 2d 298, ¶¶ 10-12. The defendant in each case drove to the meeting place. Grimm , 258 Wis. 2d 166, ¶ 5 ; Robins , 253 Wis. 2d 298, ¶¶ 14. Each defendant was arrested after he had arrived at the designated meeting place, parked his car, and exited the vehicle. Grimm , 258 Wis. 2d 166, ¶ 5 ; Robins , 253 Wis. 2d 298, ¶ 14.
¶ 17 Far from supporting Mitchell's position, Grimm , Robins , and other case law foreclose his argument that a jury could not reasonably find that his proceeding on foot to the Family Video was not an action taken in furtherance of an attempt to entice a child into a building or secluded area.[4] According to Grimm , "Robins makes it clear that going to meet at the planned time and place is a sufficient unequivocal act in furtherance of the criminal objective of child enticement, when earlier conversations provide reasonable inferences of that criminal objective." Grimm , 258 Wis. 2d 166, ¶ 19. Like the defendants in Grimm and Robins , Mitchell was apprehended while heading to the designated meeting place, at the designated time.
¶ 18 Further, although Mitchell makes much of the two blocks separating him from the Family Video, we conclude his conviction does not fail for lack of sufficient evidence based on this fact alone. Koenck is instructive in this regard. There, police received a tip from an individual associated with a child pornography monitoring organization. Koenck , 242 Wis. 2d 693, ¶¶ 3-4. The person had communications of a sexual nature with Koenck using the fictitious profiles of twin twelve-year-old girls, "Teddie" and "Georgie." Id. , ¶ 3. Koenck offered to travel from Iowa to Wisconsin to meet the "twins," and he agreed to meet them at a McDonald's near his hotel. Id. , ¶ 6.
¶ 19 Unlike the defendants in Grimm and Robins , Koenck was apprehended off-premises from the designated meeting location. Police had surveillance on Koenck's car and watched him park his vehicle in the parking lot of a neighboring bank. Koenck , 242 Wis. 2d 693, ¶ 6. Koenck was apprehended after he began walking toward the McDonald's. Id. It is unclear whether Koenck directly raised the issue of whether police had intercepted him before he had taken an action in furtherance of the crime. However, while analyzing the sufficiency of the complaint, we stated that "Koenck did everything necessary to insure the commission of the crime intended, and his conduct is not excused because of the fortuitous circumstance rendering it impossible to effectuate the intended result." Id. , ¶ 28. Our opinion extensively discussed principles of attempt, including the requirement of an "unequivocal act" toward the commission of the offense. Thus, our holding in Koenck implies that it is not necessary, as a matter of law, for a defendant to actually reach the designated meeting place to be charged with attempted child enticement. See id. , ¶¶ 24-25.
¶ 20 In short, Mitchell ignores that the relatively short distance between the Family Video and where he was apprehended could have significant evidentiary value to a reasonable juror. In the context of his trial, the distance was a fact for the jury to weigh in reaching its conclusion on whether Mitchell had taken action in furtherance of his intent to commit child enticement. Under the facts in this case, the jury could reasonably conclude the two-block distance, combined with all the other evidence, was sufficient for finding Mitchell guilty of attempted child enticement. In no event is the two-block distance a fact making the totality of the evidence insufficient, as a matter of law, to support his conviction for attempted child enticement.
¶ 21 Mitchell also argues the State presented "no evidence that Family Video was a secluded place where it is easier to commit child sex offenses (although it is a building)." However, as even Mitchell recognizes, the Family Video was "not the location at which the illicit sexual activity was to occur." Any argument that the State failed to present sufficient evidence of Mitchell's intent to take the child to a secluded place is meritless in light of the repeated text messages in which Mitchell explicitly stated he meant to take "Chris" back to his residence. We therefore reject Mitchell's reliance on State v. Provo , 2004 WI App 97, 272 Wis. 2d 837, 681 N.W.2d 272, and State v. Pask , 2010 WI App 53, 324 Wis. 2d 555, 781 N.W.2d 751.
¶ 22 To the extent Mitchell asserts the State's theory was that the sexual contact was to occur at the Family Video, any such contention is belied by the State's closing argument. The State specifically urged the jury to find the first element of child enticement satisfied because Mitchell had suggested he and "Chris" go back to his residence. For this reason, Mitchell's argument is a nonstarter that "Family Video, a store open to the public, was not a place where illicit sex could be facilitated under ordinary circumstances." Mitchell's concerns about whether the Family Video was sufficiently secluded to qualify under the child enticement statute are thus misdirected. Again, the evidence was sufficient for the jury to conclude that Mitchell intended for the sexual contact to occur at his residence, not at the Family Video.
By the Court. -Judgment and orders affirmed.
Not recommended for publication in the official reports.

The postconviction motions concerned allegations of ineffective assistance of trial counsel and a request for sentence credit. The circuit court granted Mitchell the requested sentence credit, but it concluded Mitchell failed to support his allegation that his attorney performed deficiently. Although Mitchell purports to appeal from those motions, he raises no argument regarding them, and we decline to address them further.

Mitchell does not raise any argument regarding his convictions for use of a computer to facilitate a child sex crime and misdemeanor bail jumping.

The focus of our review in State v. Brienzo , 2003 WI App 203, 267 Wis. 2d 349, 671 N.W.2d 700, was whether the charge of attempted child enticement was properly dismissed, not whether there was sufficient evidence to support a conviction.

Mitchell does not directly argue that he was walking to some location other than the Family Video, although some of his "change of heart" arguments tilt in that direction. Any such argument would be meritless. Based on the evidence, the jury could reasonably infer that Mitchell was walking to the Family Video to meet "Chris." Again, we draw all reasonable inferences in the State's favor when reviewing a conviction. State v. Page , 2000 WI App 267, ¶ 14, 240 Wis. 2d 276, 622 N.W.2d 285.