2012 COA 57

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Craig Arthur DOUGLAS, Jr., Defendant–Appellant.**

**No. 09CA0781.**

Colorado Court of Appeals, Div. VII.

April 12, 2012.

Rehearing Denied June 14, 2012.

John W. Suthers, Attorney General, Paul Koehler, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MILLER.

¶ 1 Defendant, Craig A. Douglas, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted sexual assault on a child, enticement of a child, Internet luring of a child, Internet sexual exploitation of a child, and solicitation to commit sexual assault on a child by one in a position of trust. He also appeals his sentence.

¶ 2 As issues of first impression, we conclude that:

- The prosecution presented insufficient evidence to support the Internet luring of a child and Internet sexual exploitation of a child convictions under a com-

plicity theory because there was no evidence that the undercover agent with whom defendant was allegedly complicit committed the crimes, and

- One may be guilty of enticement by inviting or persuading a child to enter a room within the child's home with the proscribed intent.

Accordingly, the judgment and sentences are vacated as to defendant's convictions on the Internet counts, but we affirm as to all other counts and sentences.

## I. Background

¶ 3 Defendant, a resident of Pennsylvania, began communicating via the Internet and the telephone with an undercover officer in Colorado who held herself out as "Marsha" (mother), the twenty-eight-year-old mother of "Melissa" (daughter), a nine-year-old girl. Mother indicated to defendant that she would make daughter available to him for sex. Over the next ten days, defendant and mother communicated over the Internet and telephone and via text message regarding defendant's desire to come to Colorado to establish a sexual relationship with both mother and daughter. Defendant arranged to travel to Colorado, and he was arrested when he arrived.

¶ 4 Following a trial, a jury found defendant guilty of each of the five counts. The trial court sentenced defendant to consecutive sentences of ten years to life on the enticement, Internet luring of a child, Internet sexual exploitation of a child, and solicitation counts, as well as a concurrent sentence of three years on the attempt count.

¶ 5 On appeal, defendant argues that (1) there was insufficient evidence to support four of his convictions, (2) the trial court erred in instructing the jury on complicitor liability, (3) the trial court improperly admitted certain evidence and expert testimony at trial, (4) improper conduct by the prosecutor at trial requires reversal, (5) the trial court erred in imposing consecutive sentences, and (6) the attempt conviction merges into the solicitation conviction. We agree in part with his first contention, and we reject the others.

## II. Sufficiency of the Evidence

¶ 6 Defendant contends that the convictions for (1) Internet luring of a child, (2) Internet sexual exploitation of a child, (3) enticement of a child, and (4) solicitation must be vacated because the prosecution failed to present sufficient evidence to prove the elements of each offense beyond a reasonable doubt. We agree that there was insufficient evidence to support his conviction on the two Internet counts but conclude that the evidence was sufficient to support his convictions for enticement and solicitation.

### A. Standard of Review

¶ 7 In reviewing a sufficiency claim, we view the evidence in the light most favorable to the prosecution. *People v. Oram*, 217 P.3d 883, 887 (Colo.App.2009), *aff'd*, 255 P.3d 1032 (Colo.2011). We then evaluate whether the evidence is sufficient to allow a reasonable person to conclude that the defendant is guilty beyond a reasonable doubt on the elements of the offense charged. *Id.* When the prosecution fails to present sufficient evidence of the offense charged, double jeopardy prevents the prosecution from again trying the accused on the charge. *People in Interest of H.W.*, 226 P.3d 1134, 1138 (Colo. App.2009).

¶ 8 To the extent that defendant's arguments turn on a question of statutory interpretation, our review is de novo. *People v. Vecellio*, 2012 COA 40, ¶ 13, 292 P.3d 1004. In construing a statute, we must effectuate the intent of the General Assembly, which is charged with defining criminal conduct and establishing the legal components of a crime. *Id.* at ¶ 14. We begin with the plain language of the statute, reading the words and phrases in context and construing them according to their common usage. *Id.* If the statutory language is clear and unambiguous, we apply it as written without resort to further statutory analysis. *Id.*

### B. Internet Counts

¶ 9 Defendant first argues that there was insufficient evidence supporting his convictions for Internet luring of a child and Internet sexual exploitation of a child because

there was no evidence that defendant himself committed the crimes or that he acted as an accomplice to a principal who committed the crimes. We agree.

¶ 10 As relevant here, an actor commits the crime of Internet luring of a child if

the actor knowingly communicates over a computer or computer network [or] telephone network ... to a person who[m] the actor knows or believes to be under fifteen years of age and, in that communication or in any subsequent communication ... describes explicit sexual conduct ... and, in connection with that description, makes a statement persuading or inviting the person to meet the actor for any purpose....

§ 18-3-306(1), C.R.S.2011. Section 18-3-405.4(1), C.R.S.2011, provides, in relevant part, that an actor commits the crime of Internet sexual exploitation of a child if

the actor knowingly importunes, invites, or entices through communication via a computer network or system [or] telephone network ... a person whom the actor knows or believes to be under fifteen years of age ... to:

(a) Expose or touch the person's own or another person's intimate parts while communicating with the actor via a computer network or system [or] telephone network ...; or

(b) Observe the actor's intimate parts via a computer network or system [or] telephone network....

¶ 11 During closing argument, the prosecutor admitted that there was no "direct proof that [defendant] talked dirty to the child either on the computer or on the telephone." Accordingly, the prosecutor relied exclusively on a theory of complicitor liability, arguing that defendant and mother were "complicitors in using this computer in order to arrange the sexual liaison with the child."

■■■ ¶ 12 Complicity is a theory whereby a defendant is legally accountable for a criminal offense committed by another person. *Grissom v. People,* 115 P.3d 1280, 1283 (Colo. 2005); *Bogdanov v. People,* 941 P.2d 247, 250 (Colo.1997), *abrogated on other grounds by Griego v. People,* 19 P.3d 1, 8 (Colo.2001). To be liable as an accomplice, an actor must

aid, abet, advise, or encourage another person in planning or committing a crime with the intent to promote or facilitate commission of the crime. *See* § 18-1-603, C.R.S.2011. Accordingly, to convict a defendant of complicity, it is necessary for the prosecution to prove that the underlying crime was committed. *See Shuttlesworth v. City of Birmingham,* 373 U.S. 262, 265, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963) ("It is generally recognized that there can be no conviction for aiding and abetting someone to do an innocent act.").

¶ 13 Here, the trial court gave the following stock complicity instruction:

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:

1. A crime must have been committed.

2. Another person must have committed all or part of the crime.

3. The defendant must have had knowledge that the other person intended to commit all or part of the crime.

4. The defendant did intentionally aid, abet, advise, or encourage the other person in the commission or planning of the crime.

■ ¶ 14 At trial, the prosecutor conceded that there was no evidence that defendant directly committed the crimes of Internet luring of a child or Internet sexual exploitation of a child as a principal. Neither did the prosecutor proffer any evidence that mother, while using a computer or telephone network, (1) knowingly described explicit sexual conduct to a child under fifteen years old and attempted to persuade that child to meet her or (2) knowingly importuned a child under fifteen years old to expose or touch the child's own or another's intimate parts or observe mother's intimate parts. Therefore, we conclude that the prosecution failed to prove beyond a reasonable doubt that an Internet crime was committed. Accordingly, there was insufficient evidence to prove either that defendant was directly liable for the Internet crimes as a principal or that he was liable as an accomplice for mother's commission of the crimes.

¶ 15 Thus, we vacate defendant's convictions for Internet luring of a child and Internet solicitation of a child.

## C. Enticement of a Child

¶ 16 Defendant next contends that there was insufficient evidence to support his conviction for enticement of a child because (1) there was no evidence he directly communicated with a child or a person he believed to be a child, and (2) mother invited him to stay at her home while he was in Colorado and there was no evidence he attempted to invite or persuade daughter to enter any more secluded place. We are not persuaded.

¶ 17 As relevant here, an actor commits the crime of enticement of a child if

he or she invites or persuades, or attempts to invite or persuade, a child under the age of fifteen years to enter any vehicle, building, room, *or* secluded place with the intent to commit sexual assault or unlawful sexual contact upon said child. It is not necessary to a prosecution for attempt under this subsection (1) that the child have perceived the defendant's act of enticement.

§ 18–3–305(1), C.R.S.2011 (emphasis added).

¶ 18 Here, in their first chat conversation, defendant asked mother if she and daughter would visit him in Pennsylvania, and mother persuaded him it would be better for him to visit them in Colorado. Defendant then asked whether, if he came to Colorado, he would be staying with mother. Mother agreed that he could stay at her home, and the two made plans for defendant's first night in Colorado. Defendant suggested that he sit between mother and daughter on the couch while the three of them watched a movie. Later in the conversation, defendant said, "[W]ell [I] guess when we start watching the movie you can teach her how to suck."

¶ 19 In closing argument, the prosecutor argued that, through this statement, defendant attempted to use mother as his agent in attempting to invite or persuade daughter to go to the couch for the purpose of illegal sexual activity.

### 1. Adult Intermediary

■ ¶ 20 Defendant first argues that there was no evidence of the "invite or persuade" element. According to defendant, the plain language of section 18–3–305(1) requires a direct communication with a child, or a person whom the actor believes to be a child, rather than a communication with an adult intermediary. The People, however, argue that the federal courts of appeal addressing the issue in the context of the federal enticement statute [1] have held that a communication with an adult intermediary for the purpose of attempting to entice a child for a sex is sufficient to constitute the offense. *See, e.g., United States v. Rothenberg,* 610 F.3d 621, 626 (11th Cir.2010) (concluding that proof that the defendant attempted to persuade an undercover officer posing as the parent of a minor child to provide the child for sex is sufficient to constitute the crime of attempted enticement); *United States v. Nestor,* 574 F.3d 159, 162 (3d Cir.2009) (same); *United States v. Spurlock,* 495 F.3d 1011, 1014 (8th Cir.2007) (same). For three reasons, we are persuaded that section 18–3–305(1) does not require evidence that defendant communicated directly with a child, or a person he believed to be a child, and that a communication with an adult intermediary is sufficient.

■ ¶ 21 First, by its plain language, section 18–3–305(1) prohibits an attempt to invite or persuade a child to enter a proscribed place for illegal sexual activity. Section 18–3–305(1) also provides that "[i]t is not necessary to a *prosecution for attempt* under this subsection (1) that the child have perceived the defendant's act of enticement" (emphasis added). Thus, we are persuaded that using an adult intermediary to assist in inviting or persuading a child to enter a proscribed location for the purpose of illegal sexual activity may constitute an "attempt" for purposes of the enticement statute.

1. Pursuant to 18 U.S.C. § 2422(b), "[w]hoever ... knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in ... any sexual activity for which any person can be charged with a criminal offense, or attempts to do so," commits the crime of enticement.

¶ 22 Another division of this court has recently so held. The division in *Vecellio*, ¶ 48, upheld a defendant's conviction for enticement where the defendant attempted to use an adult intermediary to procure a child for illegal sexual activity. There, the defendant corresponded over the Internet with an undercover police officer who held herself out as the single mother of a thirteen-year-old daughter with whom she had an incestuous relationship. *Id.* at ¶¶ 2–3. The defendant and the undercover officer agreed to meet and go to the mother's house to have three-way sex with the daughter. *Id.* at ¶ 5. In rejecting the defendant's argument that there was insufficient evidence to convict him of enticement of a child because he never communicated with anyone purporting to be a child, the division concluded that the defendant could be held directly liable as a principal because "he attempted to use [the mother] as his agent to invite or persuade [the daughter] on his behalf." *Id.* at ¶ 48. We find *Vecellio* persuasive.

¶ 23 Second, we are persuaded that the efficacy of the statute prohibiting enticement of children for sexual activity "would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective." *United States v. Murrell*, 368 F.3d 1283, 1287 (11th Cir.2004) (construing federal enticement statute); *see also Spurlock*, 495 F.3d at 1014 (federal enticement statute does not exempt "sexual predators who attempt to harm a child by exploiting the child's natural impulse to trust and obey her parents").

¶ 24 Third, we are persuaded by the Third Circuit's reasoning in *Nestor* that there are children who, despite being too young to use a computer to communicate over the Internet, are targeted by sexual predators. 574 F.3d at 162. Predators must necessarily reach such children through an older intermediary, most likely an adult. *Id.* Accordingly, accepting defendant's argument here would exempt from the reach of section 18–3–305(1) predators who prey on very young children. *See id.* We do not believe the General Assembly intended such a result.

■ ¶ 25 We therefore conclude that there was sufficient evidence that defendant

attempted to use mother as his agent in attempting to invite or persuade daughter to go to the couch, where mother would teach daughter how to engage in sexual activity with defendant. Thus, the prosecution proffered sufficient evidence of the "invite or persuade" element.

## 2. Room

■ ¶ 26 Defendant next argues that, when an actor is already inside a home at the invitation of its occupants, inviting or persuading the child to sit on a couch inside the home does not satisfy the element of inviting or persuading the child to enter "any vehicle, building, room, or secluded place." In particular, defendant relies on a recent Wisconsin Court of Appeals case, *State v. Pask*, 324 Wis.2d 555, 781 N.W.2d 751, 755 (2010), defining the term "secluded place" as "any place that provides the enticer an opportunity to remove the child from within the general public's view to a location where any intended sexual conduct is less likely to be detected by the public." According to defendant, when the actor has already been invited inside the child's home, inviting or persuading the child to sit on a couch inside the home "does not alter the likelihood of detection by the public as measured against other locations in the home."

¶ 27 Defendant does not acknowledge that, by inviting daughter to sit on the couch, defendant necessarily invited her to enter the particular room in the home where the couch was located. Likewise, defendant does not argue that the room where the couch was located is not a "room" as contemplated by the statute. Thus, we are not persuaded that evidence that an actor invited or persuaded, or attempted to invite or persuade, a child to such a room does not satisfy section 18–3–305(1).

¶ 28 Moreover, were we to adopt defendant's interpretation of the statute, a sexual predator of children, such as a relative, who lives in the same home as the child or who is invited to the child's home, would be exempt from section 18–3–305(1) so long as he or she invites or persuades the child to enter any area of the home with a similar likelihood of

detection as the other areas. We decline to so interpret section 18–3–305(1).

¶ 29 Accordingly, viewing the record in the light most favorable to the prosecution, we conclude that there was sufficient evidence of defendant's guilt on the enticement charge.

### D. Solicitation

¶ 30 Defendant contends that there was insufficient evidence to convict him of solicitation to commit sexual assault on a child by one in a position of trust (POT) because there was no evidence that he commanded, induced, entreated, or otherwise attempted to persuade mother to commit POT as a principal or accomplice. We are not persuaded.

¶ 31 An actor commits the crime of POT if he or she "knowingly subjects another not his or her spouse to any sexual contact," while the victim is a child less than eighteen years old, and "the actor committing the offense is one in a position of trust with respect to the victim." § 18–3–405.3(1), C.R.S.2011. An actor commits the crime of solicitation if

> he or she commands, induces, entreats, or otherwise attempts to persuade another person ... to commit a felony, *whether as principal or accomplice,* with intent to promote or facilitate the commission of that crime, and under circumstances strongly corroborative of that intent.

§ 18–2–301(1), C.R.S.2011 (emphasis added).

¶ 32 Defendant relies on particular statements that he made which, according to him, indicate that he did not attempt to persuade mother to commit POT as either principal or accomplice. Defendant emphasizes his statements that he would accede to mother's wishes regarding his sexual contact with daughter, that he only wanted to have a family and companionship, and that sex was not a "big issue" for him.

¶ 33 We conclude that there was sufficient evidence to find defendant guilty, beyond a reasonable doubt, of solicitation under the theory that he attempted to persuade mother to act as his accomplice in his commission of POT. While not all of defendant's statements reflected a single-minded interest

in sexual activity with daughter, there was ample evidence of defendant's attempting to persuade mother to provide daughter for sex.

¶ 34 In their first chat conversation, defendant asked mother whether she would let her daughter "be with" a twenty-nine-year-old man, asked if mother would "be there to instruct [daughter] when[ ] she's with [defendant]," asked if there would be "a rule of no clothes" while defendant was visiting, asked if they "would all go to bed together the first night" of his visit, asked mother to dress daughter in a short skirt when mother and daughter met him at the airport, and suggested that mother could teach daughter how to engage in oral sex with him.

¶ 35 In a later telephone conversation, defendant masturbated to daughter's photograph, asked mother whether she wanted to see daughter "jerk me off," asked if mother preferred that he use condoms with daughter and wondered what would happen if he got daughter pregnant, asked mother how she would want daughter's "first time to be," and asked mother if she thought daughter would tell anyone about the sexual encounters.

¶ 36 There was also evidence that defendant attempted to persuade mother to allow him to babysit daughter while he was visiting Colorado and that he wanted to be daughter's "new dad," enabling him to be in a position of trust with respect to the victim. *See* § 18–3–401(3.5), C.R.S.2011 (a person is in a position of trust if he or she is a parent or is charged with any responsibility for supervision of a child, "no matter how brief"); *see also Pellman v. People,* 252 P.3d 1122, 1125 (Colo.2011) (the definition of "position of trust" is broad).

¶ 37 Defendant argues that there was insufficient evidence to convict him under the prosecution's alternative theory— that he attempted to persuade mother to commit POT on daughter herself with defendant acting at least as her accomplice. Even accepting this argument, we perceive no grounds for reversal. *See People v. Dunaway,* 88 P.3d 619, 622 (Colo.2004) ("[W]hen a jury instruction includes two alternative factual theories of the same charged offense and the jury returns a general verdict of guilt,

due process does not require reversal of that conviction merely because the evidence only supports one of the theories beyond a reasonable doubt.").

¶ 38 Accordingly, viewing the record in the light most favorable to the prosecution, we conclude that there was sufficient evidence of defendant's guilt on the solicitation charge.

¶ 39 Finally, we reject defendant's contention that the trial court erred in instructing the jury that it could find defendant guilty on each count if it found that he acted as the undercover officer's accomplice in her commission of the crimes for several reasons. First, because we concluded in part II.B. that there was insufficient evidence that defendant committed the Internet crimes as either a principal or an accomplice, we do not address these convictions here. Second, because we concluded in parts II.C. and D. that there was ample evidence to support defendant's convictions of enticement and solicitation as a principal, we perceive no grounds for reversal. *See id.* Third, defendant did not challenge the sufficiency of the evidence to support his conviction for attempted sexual assault. Thus, we perceive no prejudice to defendant, and no error. *See Vecellio,* ¶ 40.

## III. Evidentiary Issues

¶ 40 Defendant next contends that the trial court erred in (1) admitting evidence of other similar acts and alleged child pornography and (2) permitting the undercover officer to present expert testimony in the guise of lay witness testimony. We are not persuaded.

### A. Standard of Review

¶ 41 We review a trial court's evidentiary rulings for an abuse of discretion, and we will reverse only if the court's ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Veren,* 140 P.3d 131, 136 (Colo.App.2005).

### B. Other Acts Evidence

¶ 42 We first reject defendant's argument that the trial court erred in admitting the following evidence:

- A transcript of an Internet chat between defendant and fifteen-year-old K.B., as well as a letter, photographs, and draw-

ings K.B. had sent to defendant through the mail. The communications contain sexual innuendo such as defendant telling K.B. that she "wants his meat" and K.B. telling defendant that she "got green undies."

- A transcript of an Internet chat between defendant and a twelve-year-old girl in which he asks her if she is twelve years old, if she likes older guys, if he is "old enough," how many older guys she has been with, and whether she would be interested in meeting him.

- Photographs depicting apparently minor girls engaged in sex acts or displaying their intimate parts found on defendant's computer.

The trial court admitted the evidence for the purposes of showing whether defendant intended to lure a child for sex and whether his motive was to seek a sexual relationship with a child.

¶ 43 Pursuant to CRE 404(b), evidence of other acts is not admissible to prove a person's character to show that he acted in conformity therewith. However, the evidence may be admitted for other purposes, including as proof of intent or motive. CRE 404(b). In evaluating the admissibility of the evidence, courts consider whether (1) the evidence relates to a material fact, (2) the evidence is logically relevant, (3) the logical relevance is independent of the intermediate inference that the defendant has a bad character, and (4) the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *People v. Spoto,* 795 P.2d 1314, 1318 (Colo.1990); *accord People v. Villa,* 240 P.3d 343, 350 (Colo.App. 2009). In reviewing the trial court's admission of such evidence, "we assume the maximum probative value a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected from its introduction." *Villa,* 240 P.3d at 349.

¶ 44 Defendant does not argue that the other acts evidence fails to meet the first two prongs of the *Spoto* test. Thus, we address only the second two prongs.

¶ 45 Defendant first argues that the prosecution failed to articulate any evidential hypothesis explaining how the evidence was relevant to the issues of motive and intent independent of the intermediate inference of bad character. From the time defendant was first interviewed after his arrest, he claimed that he intended to develop a relationship with mother and had no interest in a sexual relationship with daughter. The prosecution argued in pretrial motions that the other acts evidence was relevant to show that defendant intended to seek a sexual relationship with a child and to rebut his claim that he was interested only in mother. We conclude that, independent of the inference of conformity with bad character, the other acts evidence (1) increased the probability that defendant intended to lure a child for sex and that his motive was to seek a sexual relationship with daughter and (2) decreased the probability that he intended to seek a relationship only with mother. *See Villa*, 240 P.3d at 350–52 (evidence of similar prior acts of sexual assault was relevant to proving that the defendant committed the sexual assault at issue with the requisite intent and to rebut defenses of unintentional touching and fabrication); *People v. Cowan*, 813 P.2d 810, 813 (Colo.App.1991) (evidence of similar prior acts of sexual assault was relevant to prove that the defendant committed the sexual assault at issue with the requisite intent and to rebut the defense that the defendant suffered an "idiosyncratic reaction" to a prescription drug, interfering with his ability to engage in conscious action).

¶ 46 Defendant next argues that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. In particular, defendant contends that the probative value of the other Internet chats was low because there was no evidence that defendant attempted to meet either child for the purpose of sexual exploitation and that the probative value of the photographs was low because there was no evidence that they depict children rather than adults. He further argues that the photographs were unfairly prejudicial because they portray defendant as a person who collects "lewd photographs for prurient interests."

¶ 47 We conclude the evidence was highly probative of defendant's intent and motive by showing his sexual interest in preteen and young teenage girls. The similarities between defendant's communications with mother and his communications with K.B. and the twelve-year-old lessened the danger of unfair prejudice. *See Villa*, 240 P.3d at 352; *People v. Glasser*, 293 P.3d 68, —— (Colo.App.2011) (evidence of prior acts of sexual assault similar to the assault at issue was highly probative of the defendant's contention that the victim consented). Moreover, the jury was free to consider whether the fact that defendant did not attempt to sexually exploit either K.B. or the twelve-year-old indicated that he would not attempt to sexually exploit daughter. Based on our review of the record, we cannot say that the trial court abused its discretion in admitting the photographs. It was up to the jury, as fact finder, to make the ultimate determination whether the photographs depicted children.

¶ 48 Further, the court gave oral limiting instructions before publication to the jury of the transcript of defendant's conversation with K.B., the transcript of defendant's conversation with the twelve-year-old, and the photographs. The jury received an additional written limiting instruction. In each instruction, the court stated that the evidence was admitted for the purpose of showing defendant's motive and intent and that the jurors were to consider it for no other purpose. We presume the jury followed the court's instructions in the absence of evidence to the contrary. *Villa*, 240 P.3d at 352.

¶ 49 Accordingly, we perceive no abuse of discretion in the trial court's admitting the other acts evidence and the photographs.

## C. Improper Expert Testimony

¶ 50 We next reject defendant's contention, raised for the first time on appeal, that the following lay testimony by the undercover officer constituted improper expert testimony because it was based on specialized knowledge, experience, or training:

- Her interpretation of statements defendant made about daughter as having a sexual context,
- Her opinion that the statement in her Yahoo profile that she really loved children would attract persons interested in having sex with children, and
- Her statement that, to persons interested in having sex with children, the phrase "PT Cruiser" refers to "pre-teen cruiser."

¶ 51 Defendant objected to the undercover officer's testifying to her interpretation of his statements on grounds of speculation, but he did not argue that her testimony was an improper expert opinion. Accordingly, we review for plain error. *See People v. Kruse,* 839 P.2d 1, 2–3 (Colo.1992) (reviewing for plain error where, at trial, the defendant failed to object to the witness's testimony on the grounds raised on appeal); *People v. Ujaama,* 2012 COA 36, ¶¶ 37–38, —— P.3d ——, 2012 WL 865383. Plain error is an "obvious and substantial" error that "so undermined the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller,* 113 P.3d 743, 750 (Colo. 2005) (quoting *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003)).

¶ 52 Pursuant to CRE 701, a lay witness is limited to testifying to opinions which are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge." Although police officers are often qualified as experts, they also regularly offer testimony under CRE 701 based on ordinary perception and experience. *People v. Stewart,* 55 P.3d 107, 123 (Colo. 2002). Thus, courts must consider whether the opinion offered is the result of "a process of reasoning familiar in everyday life," rather than "a process of reasoning which can be mastered only by specialists in the field." *Veren,* 140 P.3d at 137 (quoting *People v. Rincon,* 140 P.3d 976, 983 (Colo.App.2005)). It is only when the officer's opinions rely on specialized skills and training, rather than information ordinary citizens could be expected to know, that the officer must be qualified as an expert before testifying. *Id.*

¶ 53 Here, the undercover officer's interpretation of her conversations with defendant did not depend on her specialized skills and training as a police officer but rather depended on her ability to interpret a conversation in which she took part, a process of reasoning familiar in everyday life. *See United States v. Lizardo,* 445 F.3d 73, 83 (1st Cir.2006) (lay witness testimony regarding a subjective interpretation of a conversation in which the witness took part is proper so long as the opinion is rationally based on the witness's perception and is helpful to the trier of fact); *cf. Rincon,* 140 P.3d at 983 (officer's testimony that a witness may have difficulty picking a person out of a photo array when he or she did not see the person for very long was not based on the officer's experience with photo arrays but on common sense).

¶ 54 We are not persuaded by defendant's argument that the undercover officer's testimony regarding the statements in her Yahoo profile designed to attract persons with a sexual interest in children and regarding the meaning of "PT Cruiser" was based on her specialized skills and training. The admission of this testimony was not an obvious and substantial error. As discussed above, there was ample evidence of defendant's interest in having sex with children. Accordingly, we cannot say that the admission of these two statements so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *See Stewart,* 55 P.3d at 124–25 (where improper lay witness testimony by a police officer was corroborated by other evidence in the case, any error was harmless).

## IV. Prosecutorial Misconduct

¶ 55 Defendant contends that (1) the prosecutor and a prosecution witness's characterization of the photographs as "child pornography" and (2) certain statements made by the prosecutor in her opening statement and closing argument require reversal. We are not persuaded.

## A. Applicable Law

¶ 56 The supreme court has recognized that "[a] prosecutor, while free to strike hard blows, is not at liberty to strike foul ones." *Wend v. People*, 235 P.3d 1089, 1096 (Colo.2010) (quoting *Domingo–Gomez v. People*, 125 P.3d 1043, 1048 (Colo.2005)). Reviewing a claim of prosecutorial misconduct requires us to undertake a two-step process. *Wend*, 235 P.3d at 1096. Because each step in the analysis is analytically independent, even if we conclude that the prosecutor's conduct was improper, we may uphold the judgment if the errors are harmless or do not rise to the level of plain error. *See People v. Cordova*, 293 P.3d 114, —— (Colo. App.2011).

¶ 57 First, we determine whether, based on the totality of the circumstances, the prosecutor's conduct was improper. *Wend*, 235 P.3d at 1096. In evaluating the propriety of prosecutorial remarks, we consider "the language used, the context in which the statements were made, and the strength of the evidence supporting the conviction." *Domingo–Gomez*, 125 P.3d at 1050.

¶ 58 Second, we determine whether the conduct warrants reversal according to the proper standard of review. *Wend*, 235 P.3d at 1096. If the defendant lodged a contemporaneous objection at trial, we review for harmless error. *Id.* at 1097. Improper argument is harmless if it did not "substantially influence the verdict or adversely affect the fairness of the proceedings." *People v. Whitman*, 205 P.3d 371, 384–85 (Colo.App.2007).

¶ 59 If the defendant did not contemporaneously object to the improper statement, we review for plain error. *Wend*, 235 P.3d at 1097. In this context, we will reverse only if the prosecutor's conduct was "flagrantly, glaringly, or tremendously improper." *Domingo–Gomez*, 125 P.3d at 1053 (quoting *People v. Avila*, 944 P.2d 673, 676 (Colo.App.1997)).

## B. Characterization of Photographs

¶ 60 At trial, the prosecution presented the testimony of an expert in forensic computer examination. The expert testified that, in this type of case, she typically begins by searching the computer for child or other types of pornography. The prosecutor then asked if the expert had found "any images of what could be characterized as child pornography," and the expert replied that she had. When asking the expert whether defendant viewed the photographs near the time he was communicating with K.B., the prosecutor twice more referred to the photographs as child pornography. The court then asked to speak to the attorneys at the bench and, following a discussion held off the record, instructed the jury:

> The attorneys are not allowed to characterize [the photographs], so to the extent that the district attorney has characterized it as child porn[ography], you are to ignore that. That's not her statement to make. And you are to disregard any statements that she made describing it as such.

Thereafter, neither the prosecutor nor the expert used the term "child pornography" to characterize the photographs.

¶ 61 Initially, we reject defendant's contention that this issue is preserved for appeal. No contemporaneous objection by defendant appears in the trial court record. *See People v. Coughlin*, —— P.3d ——, ——, 2011 WL 1587732 (Colo.App.2011) (*cert. granted* 2011 WL 4448974 (Sept. 26, 2011)) (to properly preserve an issue for appeal, the defendant must lodge a timely and specific objection on the trial court record). Neither did defendant request further relief after the trial court gave the curative instruction. *See Mingo v. People*, 171 Colo. 474, 478, 468 P.2d 849, 851 (1970). Accordingly, we review for plain error.

¶ 62 Defendant argues that, notwithstanding the court's curative instruction, reversal is required because (1) the prosecutor and the expert improperly suggested that defendant was guilty of the additional, uncharged crime of possession of child pornography, and (2) the court failed to instruct the jury to also disregard the expert's characterization. In view of the language used, the context in which the statements were made, and the strength of the evidence supporting the conviction, we are not persuaded that the

characterization of the photographs allegedly depicting underage persons unclothed or engaged in sex acts as "child pornography" was so flagrant or tremendously improper as to require reversal. The photographs were admitted into evidence, and the jurors had the opportunity to review them and determine whether the persons depicted were underage. *See United States v. Haymond,* 672 F.3d 948, 959–60 (10th Cir.2012) (particularly where a person depicted in alleged child pornography is sufficiently young, jurors may determine for themselves whether the person is a minor); *cf. People v. Brown,* —— P.3d ——, ——, 2011 WL 3332314 (Colo.App.2011) (a jury is capable of determining whether children depicted in child pornography are real or virtual). Further, the trial court specifically instructed the jury to disregard the prosecutor's characterization. We presume that the jury followed the trial court's remedial instruction and disregarded the characterization of the photographs. *See Domingo–Gomez,* 125 P.3d at 1054 (presuming that the jury ignored a trial court's remedial instruction would deprive the court of its ability to prevent a mistrial by correcting improper remarks as they occur).

### C. Opening Statement and Closing Argument

¶ 63 Defendant contends that remarks made by the prosecutor during her opening statement and closing argument individually and cumulatively amount to reversible error. We disagree.

¶ 64 During its opening statement, a party is generally limited to discussing facts the party intends to prove at trial. *People v. Wallace,* 97 P.3d 262, 269 (Colo. App.2004). The scope of a closing argument is within the discretion of the trial court. *Id.* During its closing argument, a party may properly discuss the facts in evidence and any reasonable inferences drawn therefrom. *Domingo–Gomez,* 125 P.3d at 1048. However, while prosecutors possess wide latitude in presenting oral arguments, such arguments must remain within ethical boundaries. *Id.* Accordingly, counsel must "avoid statements of personal opinion, personal knowledge, or inflammatory comments." *Id.* at 1049. Nev-

ertheless, an improper statement by a prosecutor in closing argument rarely constitutes plain error requiring reversal. *Wallace,* 97 P.3d at 269.

¶ 65 Defendant first argues that reversal is required by the prosecutor's remark during her opening statement, that "[i]t's the Christmas season [the trial occurred in December], but this is not a Hallmark moment, I assure you." However, defendant's contemporaneous objection to the comment was sustained, and he requested no further relief. Accordingly, we need not consider this alleged error. *See Mingo,* 171 Colo. at 478, 468 P.2d at 851 (declining to review allegedly improper statement by prosecutor where the defendant's objection to the comment was sustained and he requested no further relief).

¶ 66 Nevertheless, we perceive no error. The comment was a mere rhetorical device. A prosecutor may properly employ a rhetorical device so long as he or she "does not thereby induce the jury to determine guilt on the basis of passion or prejudice" or "attempt to inject irrelevant issues into the case." *People v. Allee,* 77 P.3d 831, 837 (Colo.App.2003) (finding no basis for reversal where, during closing argument, the prosecutor stated that "the case could have been a 'made for TV movie'"). We conclude that, as a mere rhetorical embellishment, the statement was not improper.

¶ 67 Defendant next argues that reversal is required by the prosecutor's statements during closing rebuttal concerning defendant's "grooming" both mother and daughter for sexual activity with daughter. Defendant's contemporaneous objection was overruled. Accordingly, we review for harmless error.

¶ 68 On appeal, defendant contends the comments represented either (1) an improper expert opinion regarding the psychological profile of sexual predators of children or (2) an improper suggestion that the prosecutor's assessment was trustworthy because she possessed evidence that defendant's behavior was consistent with the grooming behavior of sexual predators of children. In view of the language used, the context in which the statements were made,

and the strength of the evidence supporting the conviction, we are not persuaded that the prosecutor's use of the term "grooming" was improper. However, even assuming the use of the term was improper, we conclude that any error was harmless. The use of the term represented a small part of the prosecutor's closing rebuttal, and the prosecutor's argument was a direct response to defense counsel's argument that defendant was interested in a romantic relationship only with mother and that he would leave the decision regarding any future sexual activity with daughter to mother. *See Whitman*, 205 P.3d at 385. Accordingly, we cannot say that the use of the term "grooming" undermined the fundamental fairness of defendant's trial.

¶ 69 Finally, defendant argues that reversal is required by the prosecutor's statements in closing rebuttal that defense counsel's argument that "this is the mother's fantasy and not the defendant's fantasy" was "ridiculous." The prosecutor then asked, "[I]f you ran across some mom that wanted to sexually exploit her daughter with you, would you fly to Colorado without contacting the police to join you in meeting that mother[?] I mean, 'Whew.'" Defendant did not contemporaneously object to these statements, and we accordingly review them for plain error.

¶ 70 On appeal, defendant argues that the prosecutor's rhetorical question regarding contacting the police was designed to divert the jury from deciding the case based upon the evidence and the law, and decide the case instead based upon other considerations. While we are not persuaded the prosecutor's comments were improper, even if they were, we conclude they were not so flagrant or tremendously improper as to require reversal. The comments were a direct response to defendant's theory of the case, and the lack of a contemporaneous objection may indicate defense counsel's belief that the comments were not overly damaging when they were made. *Domingo–Gomez*, 125 P.3d at 1054.

¶ 71 Finally, we reject defendant's assertion of cumulative error. We will reverse for cumulative error only where, although numerous trial errors individually have been found harmless, in the aggregate those errors prejudiced the defendant's substantial rights and deprived him or her of a fair trial. *People v. Gallegos*, 260 P.3d 15, 28–29 (Colo. App.2010). We have not found numerous errors that, in the aggregate, prejudiced defendant's substantial rights or deprived him of a fair trial. Accordingly, we perceive no cumulative error.

## V. Sentencing

¶ 72 Defendant contends that the court erred in imposing consecutive sentences on the enticement and solicitation counts. We are not persuaded.

¶ 73 When a defendant is convicted of more than one offense, the decision to impose concurrent or consecutive sentences is within the sound discretion of the trial court. *Juhl v. People*, 172 P.3d 896, 899 (Colo.2007) (citing *Qureshi v. Dist. Court*, 727 P.2d 45, 46–47 (Colo.1986)). Thus, we review a trial court's imposition of consecutive sentences for an abuse of discretion. *See People v. Muckle*, 107 P.3d 380, 382 (Colo.2005).

¶ 74 Both defendant and the People argue that the trial court's discretion is limited by statute. Defendant argues that, pursuant to section 18-1–408(3), C.R.S.2011, if the defendant is convicted of multiple counts, the trial court must impose concurrent sentences "when the counts are based on the same act or series of acts arising from the same criminal episode *and* the evidence supporting the counts is *identical.*" *Qureshi*, 727 P.2d at 47 (emphasis in original). According to defendant, the convictions for enticement and solicitation were based on the same act or series of acts and the evidence supporting each count is identical.

¶ 75 The People contend that section 18-1.3–1004(5)(a), C.R.S.2011, requires the trial court to impose consecutive sentences on a sex offender sentenced pursuant to that section who was also convicted of "additional crimes arising out of the same incident as the sex offense." Alternatively, the People argue that the evidence supporting each count was not identical.

¶ 76 We conclude for two reasons that neither statute applies here. First, the evi-

dence supporting each count was not identical. As we explained in part II.C., the enticement count was based on defendant's statements regarding mother teaching daughter to engage in oral sex with defendant while the three watched a movie together on the couch. As we explained in part II.D., there was a wealth of other evidence supporting the solicitation count, in addition to defendant's statement regarding mother teaching daughter. The mere possibility that the jury may have relied on that statement in returning both convictions is not sufficient to require concurrent sentences. *See Muckle,* 107 P.3d at 383. Second, where the communications between defendant and mother took place over a period of ten days, we conclude that the two crimes did not "arise out of the same incident," as required by section 18–1.3–1004(5)(a).

¶ 77 Accordingly, because neither statute mandated a particular sentence, we conclude that the decision to impose consecutive or concurrent sentences remained within the sound discretion of the trial court. We perceive no abuse of that discretion.

## VI.   Merger

¶ 78 Finally, defendant contends that the attempt conviction is a lesser included offense of the solicitation conviction and, thus, the attempt conviction must be vacated. We are not persuaded.

¶ 79 We review de novo whether two criminal offenses must merge. *People v. Torres,* 224 P.3d 268, 275 (Colo.App.2009).

¶ 80 Pursuant to section 18–1–408(1)(a), C.R.S.2011, a defendant may not be convicted of more than one offense if "[o]ne offense is included in the other." In making this determination, the reviewing court compares the statutory elements of the two offenses, rather than comparing the evidence presented at trial. *People v. Leske,* 957 P.2d 1030, 1036 (Colo.1998). As relevant here, an offense is lesser included if proof of the elements of the greater offense also proves all the elements of the lesser offense. § 18–1–408(5)(a), C.R.S.2011. However, if each offense requires proof of an additional fact which the other does not, the offense is not lesser included. *Leske,* 957 P.2d at 1036.

¶ 81 Here, defendant was charged with solicitation to commit POT, requiring proof of his intent to promote or facilitate commission of that crime. *See* § 18–2–301(1). He was also charged with attempted sexual assault on a child, requiring proof of a substantial step toward commission of that crime strongly corroborating his purpose to complete the crime. *See* § 18–2–101, C.R.S.2011. Sexual assault on a child is not a lesser included offense of POT. *Leske,* 957 P.2d at 1040 (each of these offenses required proof of a fact the other did not); *accord People v. Tillery,* 231 P.3d 36, 48 (Colo.App.2009), *aff'd sub nom. People v. Simon,* 266 P.3d 1099 (Colo.2011). Because his solicitation and attempt convictions each required proof of defendant's intent to commit a different underlying offense, we conclude that the convictions do not merge.

## VII.   Conclusion

¶ 82 The judgment and sentence are vacated as to the Internet luring of a child and Internet sexual exploitation of a child convictions, and the case is accordingly remanded to remove the convictions and sentences on Counts 3 and 4 from the mittimus. The judgment and sentence are affirmed in all other respects.

Judge ROMÁN and Judge RICHMAN concur.