23CA0174 Peo v Santiago 03-26-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0174
El Paso County District Court No. 21CR1233
Honorable Monica J. Gomez, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Marvin Gabriel Santiago,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Johnson and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

---

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, River B. Sedaka, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Marvin Gabriel Santiago, appeals the judgment of conviction entered after a jury found him guilty of first degree murder.  We affirm.

## I.    Background

¶ 2    Santiago called 911 reporting that his girlfriend, Elena Alinj, was unresponsive in the motel room where they were living.  She had been strangled and suffered multiple broken ribs, a broken jaw, lacerations on her head, and bruises and bite marks over her whole body.  Santiago initially told police that Alinj was injured during consensual rough sex.  He later admitted to beating and strangling her but claimed that he did not intend to kill her.

¶ 3    The prosecution charged Santiago with first degree murder, second degree murder, two counts of first degree assault, and eight crime of violence sentence enhancers.

¶ 4    Santiago's first trial ended in a mistrial after the prosecutor elicited evidence that Santiago invoked his right to counsel.  Over his objection, Santiago was retried.

¶ 5    At his second trial, the prosecution introduced evidence that Santiago repeatedly threatened Alinj's life via Facebook message and that she ultimately died by homicidal violence.  Santiago

testified in his own defense, admitting that he caused Alinj's injuries but stating he did so the day before Alinj died and had attempted to keep her alive.  Based on this testimony, the defense argued that Santiago did not act with the requisite intent for murder.

¶ 6     The jury found Santiago guilty of first degree murder and the trial court sentenced him to life imprisonment without the possibility of parole.

¶ 7     Santiago appeals, arguing that the trial court violated his right to be free from double jeopardy by allowing him to be retried.  He further asserts that reversal is warranted based on prosecutorial misconduct.  We disagree with these arguments and affirm.

## II.     Double Jeopardy

### A.     Applicable Law

¶ 8     Generally, when a defendant moves for a mistrial and the trial court grants it, the defendant cannot later complain that the resulting retrial violated his rights to be free from double jeopardy.  *See People v. August*, 2016 COA 63, ¶ 14.  But if the prosecution acted with the intent to provoke the defendant into moving for a mistrial, the defendant's right to be free from double jeopardy

2

prevents retrial. *Oregon v. Kennedy*, 456 U.S. 667, 673-79 (1982); *see also August*, ¶ 15. This narrow exception is subject to "an extremely exacting standard," met only in rare circumstances — where the nature of the prosecutor's misconduct "clearly and unquestionably" demonstrates not only an intent to prejudice the defendant but to deliberately cause or invite a mistrial. *August*, ¶ 20 (first quoting *Earnest v. Dorsey*, 87 F.3d 1123, 1130 (10th Cir. 1996); and then quoting *State v. Kelly*, 2015-Ohio-1948, ¶ 19 (Ct. App.)).

¶ 9 A defendant has the burden to establish that the prosecutor acted with the intent to provoke the defense into obtaining a mistrial. *August*, ¶ 19. We review de novo whether the trial court applied the correct legal standard. *Id.* at ¶ 23. But the court's finding concerning the prosecution's motivation and intent is a finding of fact, and we defer to it unless it is clearly erroneous. *Id.* A finding is clearly erroneous when it has no support in the record. *See People v. Beauvais*, 2017 CO 34, ¶ 22.

¶ 10 Among the factors a court may consider in determining the prosecutor's intent are whether the prosecutor proffered some plausible justification for his actions, as well as whether the record

3

contains any indication that the prosecutor believed the defendant would be acquitted and whether another trial would be desirable for the government. *August,* ¶ 35.

### B. Discussion

¶ 11 At Santiago's first trial, the prosecutor elicited the following testimony:

> Prosecutor: Did you ask whether or not [Santiago] was willing to go to the police station to talk to the detectives?
>
> Officer: I did.
>
> Prosecutor: And what was his response?
>
> Officer: Not without a lawyer.

The trial court granted defense counsel's motion for a mistrial, holding that the testimony was a direct comment on Santiago's constitutional rights and there was no other way to cure the error.

¶ 12 Santiago then filed a motion to dismiss the charges based on an intentional mistrial. The trial court held a hearing and, using the correct legal standard, denied the motion. In determining that the prosecutor did not intend to provoke Santiago into requesting and obtaining a mistrial, the court found that while Santiago initially told police he would not speak to them without a lawyer, he

in fact agreed to speak to detectives at some point. The court weighed this "most important fact" and concluded that a reasonable and equally plausible alternative answer to the prosecutor's question about Santiago's response was that Santiago was willing to speak to the police.

¶ 13    The court's additional findings reflect its consideration of relevant factors. To begin, it noted that until the motion for mistrial, the trial was going smoothly, and the prosecution was able to call all its witnesses despite some initial difficulty with medical witness availability. The court also found that the theory of defense was a bit unclear, so it was not evident that the prosecution was attempting to gain an upper hand by triggering a mistrial. Indeed, the court noted it was "a mystery" how the prosecution might have benefited from a mistrial and, based on the approaching holidays and the difficulty in calling witnesses a second time, the mistrial was to the prosecution's detriment.

¶ 14    We conclude that the trial court's findings are supported by the record. Santiago argues his eventual willingness to speak with police would not have been responsive to the prosecutor's question so the prosecutor could only have intended to elicit inadmissible

5

evidence. But the prosecutor was asking about "whether or not [Santiago] was willing to go to the police station to talk to the detectives." Despite Santiago's arguments, we conclude the fact that he ultimately spoke with police was a reasonable response to the prosecutor's question.

¶ 15 Moreover, even if the prosecutor was trying to elicit inadmissible testimony, there is no evidence in the record that he was doing so to avoid a jury verdict. *See id.* at ¶ 22 ("It doesn't even matter that he knows he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means." (quoting *United States v. Oseni*, 996 F.2d 186, 188 (7th Cir.1993))). To the contrary, the record supports the court's finding that, until the mistrial, the prosecution's "case was going quite well," and that it did not stand to gain from a mistrial because it had had difficulty calling its medical witnesses and the speedy trial deadline was in the middle of the winter holiday season. *See id.* at ¶ 35 (identifying these factors as relevant to prosecutorial intent).

¶ 16 Santiago argues the prosecution had a motive to trigger a mistrial after learning the defense theory. But the court was

entitled to resolve conflicts, inconsistencies, and disputes in the evidence before determining that the prosecution did not stand to benefit. *See People v. Crawford*, 230 P.3d 1232, 1237 (Colo. App. 2009). Likewise, Santiago's argument that the prosecution changed its strategy at the second trial does not negate the record support for the court's conclusion regarding prosecutorial intent at the time of the mistrial. *See Salazar v. People*, 870 P.2d 1215, 1221 (Colo. 1994) (clear error review requires deference to findings supported by the record, even if there is conflicting evidence). While Santiago emphasizes perceived changes in prosecutorial strategy between the first and second trials, the trial court could necessarily have only assessed the prosecutor's intent at the time the mistrial occurred and not on events that occurred later in time, at the second trial. Because there is evidence to support its determination that the prosecutor did not intend to provoke a mistrial, we may not disturb it. Accordingly, Santiago is not entitled to relief.

### III. Prosecutorial Misconduct

¶ 17  Santiago next argues that he is entitled to a new trial based on prosecutorial misconduct. We disagree.

## A. Applicable Law

¶ 18    We review claims of prosecutorial misconduct in two steps. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor engaged in misconduct based on the totality of the circumstances. *Id.* We afford prosecutors wide latitude to comment on the evidence, draw reasonable inferences therefrom, and respond to arguments made by the defense. *People v. Samson*, 2012 COA 167, ¶ 30. While prosecutors may engage in oratorical embellishment, they may not misstate the evidence, use arguments intended to inflame the jury's passions or prejudices, or assert personal opinions about the defendant's guilt. *Id.* at ¶¶ 31-32.

¶ 19    Second, if there was misconduct, we determine whether reversal is warranted under the proper standard. *Id.* We review preserved claims of prosecutorial misconduct for harmless error, reversing only if there is "no reasonable probability that it contributed to the defendant's conviction." *Crider v. People*, 186 P.3d 39, 42 (Colo. 2008). We review unpreserved claims for plain error, reversing only if the misconduct was both obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14. An error is

substantial only if it so undermines the fundamental fairness of the trial that it casts serious doubt on the reliability of the conviction. *Id.*

## B. Discussion

### 1. Impeachment of Hearsay Declarant

¶ 20 Santiago first argues that the prosecutor engaged in misconduct by attacking his next-door neighbor's credibility through prior criminal convictions. Although the neighbor did not testify at trial, he had told police during their investigation that he did not hear anything on the night of the incident. The neighbor's statement came in as admissible hearsay through the officer who spoke to the neighbor.

¶ 21 Santiago argues that the neighbor's statement supported his defense that he beat Alinj the day before her death and therefore did not intend to kill her. To cast doubt on the reliability of neighbor's testimony, the prosecutor asked the officer whether he knew about the neighbor's prior convictions. The officer said he didn't know about the neighbor's criminal history, yet the prosecutor continued to ask questions, referring to specific case numbers and charges. Santiago argues that this was misconduct.

¶ 22    We note at the outset that the prosecution was entitled to use prior felony convictions to attack the neighbor's credibility once his hearsay statement was admitted into evidence. *See* CRE 806; *see also People v. Dore*, 997 P.2d 1214, 1219 (Colo. App. 1999). We therefore see no impropriety in the prosecutor's initial question about whether the police officer was familiar with the neighbor's prior felony convictions. And as to questions about misdemeanor convictions, the trial court properly sustained defense counsel's objections and struck those references from the record, curing any error.

¶ 23    We agree with Santiago, however, that the prosecutor engaged in misconduct by proceeding to ask the officer whether he was aware of specific cases, including case numbers, after the officer testified that he was not familiar with the neighbor's criminal history. The prosecutor had no good faith basis to believe the officer was aware of individual cases, and the prior convictions were not otherwise admitted into evidence. *See People v. Carlson*, 72 P.3d 411, 418 (Colo. App. 2003) (prosecutor must have good faith basis to ask about prior felony convictions).

¶ 24    Nevertheless, the misconduct was harmless.  Although the neighbor's hearsay statement aligned with Santiago's story, the trial court found that it was not clear whether the neighbor was even home when the altercation occurred.  His hearsay statement therefore carried minimal evidentiary value.  By contrast, substantial evidence supported the prosecution's theory that Santiago intended to beat Alinj to death on the night that she died:

- The prosecution introduced many text messages in which Santiago told Alinj outright that he was going to kill her.

- Another next-door neighbor who was home that night testified that she heard a woman screaming for help, a man yelling loudly, and something being thrown at the wall.[1]

- Santiago testified that Alinj "was able to walk away" from the beating, and after the assault, she smoked marijuana, went outside to smoke cigarettes, ate lunch, and talked with him for two hours.  He also initially told police that she went to the store twice the day she died.  But a forensic

_____

[1] Even if, as Santiago argues, this neighbor was inconsistent about the length of the fight she heard and incorrectly described Santiago's physical characteristics, the jury was entitled to weigh her credibility.

pathologist testified that Alinj's broken jaw would have made it "essentially impossible" to eat and "very painful" to go through day-to-day functions and was "not something you're going to go around with for very long without seeking care."

- A paramedic testified that a wound on Alinj's head was recent and had not started healing itself before she died.

- Santiago changed his story multiple times. A different neighbor testified that after the police arrived, Santiago told him Alinj had fallen and hit her head in the bathtub but told someone else that she had hit her head on the end table by the bed. Santiago also admitted that he initially lied to police about what occurred.

¶ 25    We recognize that the prosecutor improperly referenced facts not in evidence by arguing at closing that the hearsay declarant neighbor was "a multiple-convicted felon." But like the questions about the neighbor's prior convictions — only two of which were not struck from the record — the prosecutor's comment constituted a brief part of a six-day trial. As discussed, the hearsay declarant's statement had only minimal evidentiary value compared to

substantial evidence supporting the prosecution's case.  Based on this record, we see no reasonable probability that the improper questioning contributed to Santiago's conviction.  Accordingly, reversal is not warranted.

### 2.  Asking Jury to Begin Deliberations

Santiago next asserts that the prosecutor improperly told the jury to begin deliberations early when, during rebuttal closing argument, he rhetorically asked whether any jurors did not believe that Alinj died from strangulation, that the evidence showed Santiago put his hands on her neck, that he was the kind of person who gets angry and would act on that motivation, that he can do these acts, or that he is a hero for trying to save Alinj.

We disagree with Santiago that these questions told the jury to begin deliberations early.  Instead, they were rhetorical devices asking the jury to weigh the evidence it had heard and responding to defense counsel's closing argument.  *Samson*, ¶ 30 (prosecutors have wide latitude in the language and style they choose to employ); *see also People v. Welsh*, 176 P.3d 781, 788 (Colo. App. 2007) (prosecutors have "leeway to point to evidence and inferences that cast doubt on the defense theory or show that evidence on which

defendant was relying lacked substance"). And the cases Santiago relies on are inapposite. In *People v. Flockhart*, 2013 CO 42, ¶ 15, the court instructed the jury that it could discuss the case before the close of evidence, and in *People v. McBride*, 228 P.3d 216, 223 (Colo. App. 2009), the prosecutor misstated the presumption of innocence. For these reasons, we discern no error.

### 3. Remaining Unpreserved Arguments

¶ 28 We also reject Santiago's remaining claims of prosecutorial misconduct, none of which were preserved.

¶ 29 Santiago argues the prosecutor improperly attacked his character when he asked the jury whether Santiago was "the kind of person" who would get angry enough to beat and strangle Alinj. But the court sustained defense counsel's objection to this comment. And the prosecutor's subsequent comments did not rise to the level of plain error. The prosecutor asked whether the jury believed, "based on the testimony," that Santiago "gets so angry, that he can do these acts" or "is the kind of person that would act on that kind of motivation." While it may have been inartful for the prosecutor to reference "the kind of person" Santiago is, the comments following the objection were focused on evidence related

to Santiago's temper and motive, including Santiago's own testimony that he would often beat Alinj out of anger. Particularly given Santiago's admission that he acted on his angry impulses, we conclude that any impropriety does not cast serious doubt on the fairness of his trial.

¶ 30    Santiago also argues that the prosecutor improperly invoked stigma against the poor by calling the motel where Santiago and Alinj lived "down and out" and "divey" during opening statement; eliciting testimony that they had to live there because they "don't have enough money"; and arguing that Santiago was motivated by a need for money, including a desire to get Alinj's settlement check from a car accident so he "can sit around in the motel all day and smoke marijuana and play Xbox."[2] We conclude these questions and comments were proper references to facts in evidence. Indeed, Santiago told police and testified that he and Alinj were arguing about money before the attack occurred. He also testified that he

_____

[2] The prosecutor also asked Santiago whether the motel was the kind of place sex offenders live so they can stay away from children. While this question was improper, the trial court sustained defense counsel's contemporaneous objection and counsel requested no further relief. Despite Santiago's arguments, we need not consider this error further. *See People v. Douglas*, 2012 COA 57, ¶ 65.

15

expected that Alinj would receive $25,000 if she told her lawyer she had recovered from her car accident injuries. And he described smoking marijuana in the motel.

¶ 31     Moreover, even if we were to agree that some of the prosecutor's comments went too far by invoking stereotypes about poverty, none were so "flagrantly, glaringly, or tremendously improper" as to warrant reversal for plain error. *See Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (citation omitted). In fact, Santiago's reliance on Alinj for money can be read to support his defense — indicating that he wanted her to live so that he could use her settlement check and continue relying on her financially. Accordingly, any impropriety in the prosecutor's comments did not undermine the fundamental fairness of the trial.

¶ 32     Next, Santiago argues the prosecutor denigrated the defense by characterizing his testimony as "excuses" and arguing that defense counsel "stood here and said to you maybe [Santiago is] a hero." Read in context, however, these comments highlighted the inconsistencies in Santiago's story and emphasized the weight of evidence against him. They further responded to defense counsel's argument, in both opening statement and closing argument, that

16

Santiago had tried to save Alinj's life and "had he not done that, she may not have made it as far as she did."

¶ 33 Finally, we disagree with Santiago that the prosecutor misstated the law and improperly equated his testimony to argument when he said it is "really, really important for you all to remember as jurors: It doesn't matter what [defense counsel] says, it doesn't matter what I say. It doesn't matter what the Defendant says to you. It's how you remember this evidence." While the prosecutor may have been inartful in listing Santiago's testimony alongside arguments by counsel, he did so in the context of emphasizing that the jury should consider Santiago's testimony among the evidence relevant to his guilt. Before this comment, the prosecutor contrasted Santiago's testimony with other evidence showing that Alinj died by strangulation and blunt force trauma. And during initial closing argument, he specifically listed Santiago's testimony among the pieces of evidence the jury should consider. We therefore discern no impropriety.

IV.   Disposition

¶ 34 The judgment is affirmed.

JUDGE JOHNSON and JUDGE GOMEZ concur.

17